# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

Karen Gaines,

              Plaintiff,      Case No. 1:17-cv-01488

v.                        Michael L. Brown
                                United States District Judge

UnitedHealth Group, and its
wholly-owned subsidiary Optum
Palliative and Hospice Care, Inc.,

              Defendants.

_____/

## ORDER

Plaintiff Karen Gaines sued Defendants UnitedHealth Group and Optum Palliative and Hospice Care, Inc., alleging she was fired on account of her race and gender. (Dkt. 24.) Defendants moved for summary judgment. (Dkt. 26.) The Magistrate Judge issued a Report and Recommendation ("R&R") (Dkt. 35), recommending denial of Defendants' motion. The Court adopts in part the Magistrate Judge's recommendation and denies Defendants' motion for summary judgment.

## I.      Background

### A.      Factual Background

Defendants employed Plaintiff as a hospice chaplain from April 2006 until her termination in January 2015. (Dkts. 24 ¶ 5; 26-4 ¶ 1.)  In a January 5, 2015, meeting, Plaintiff's supervisors, Eric Williams and Ginger Lewis, terminated Plaintiff effective January 19, 2015. (Dkts. 26-4 ¶¶ 2–3, 5; 30-2 ¶ 3.)  Williams and Lewis gave Plaintiff a severance agreement.  (Dkts. 26-4 ¶ 6; 30-2 ¶ 4.)  The agreement releases specific claims arising from Plaintiff's employment (including all the claims she raises here) in return for eight weeks of regular pay and a payment for one week of unused time-off.  (Dkt. 11-4.)  The agreement gave Plaintiff twenty-one days to review it and advised her to consult an attorney before releasing her claims.  (*Id.*)

Plaintiff claims that Williams told her in the termination meeting that, if she did not sign the agreement, she would not receive severance pay, her benefits would be cut off, and her last paycheck would be withheld.  (Dkts. 30-4 at 16:11–16; 30-3 ¶ 5.)  Williams directed further questions to the human resources department and provided Plaintiff with the relevant contact information.  (Dkt. 30-2 ¶ 9.)  She tried to call

that person at least a dozen times to ask about Williams's claim that she would lose severance, benefits, and her last paycheck if she did not sign the agreement but was unable to reach anyone. (*Id.*) Four or five days before her final day, Plaintiff spoke on the phone with the assistant to the human resources employee. Plaintiff did not ask questions about the agreement because the assistant said all questions needed to be addressed at "the local level." (Dkt. 30-4 at 17:20–18:11.)

On her last day, Plaintiff signed the severance agreement. (Dkt. 26-4 ¶ 28.) Plaintiff claims Williams's threat that she would lose pay and benefits, in the light of her personal and financial circumstances, compelled her to sign the agreement. (Dkt. 30-3 ¶ 6.) Plaintiff testified that despite an initial lack of pressure, she began to feel pressure to sign it. (Dkt. 30-4 at 60:16–24.) Plaintiff admits she had time to consider the agreement and understood her right to consult an attorney. (*Id.* at 63:6–65:12.) It was unclear, however, how much time she had to consider the agreement. The agreement indicated a twenty-one day period, but Williams told her she had to do it by the end of her last day of work, which would have been fourteen days. (Dkts. 30-3 ¶ 9; 30-4 at 63:6–65:6.) The

human resources call center, however, confirmed the twenty-one day period before Plaintiff signed the agreement.  (Dkts. 11-4; 28-3.)

A few weeks after signing, Plaintiff spoke with a separate human resources employee and learned that Williams was wrong when he said her benefits would cease and her paycheck would be withheld if she had not signed the agreement.   The human resources employee said that the company could not lawfully withhold her pay.  (Dkt. 30-4 at 19:17–20:5.) The human resources employee, however, told Plaintiff that it was too late for her to rescind the severance agreement, even though she had not yet received the severance benefits.  (Dkts. 30-3 ¶ 11; 30-4 at 19:15–30:14.)

In February 2015, Plaintiff received $9076.15 from Defendants for signing the severance agreement.  (Dkt. 26-4 ¶ 31.)  Plaintiff also used outplacement services the agreement offered her.  (*Id*. at ¶ 34.)  Plaintiff has not repaid Defendants the severance benefits she received or the value of the outplacement services she used.  (*Id*. at ¶ 35; Dkts. 30-3 ¶ 13; 30-4 at 14:18–20.)

## B.    Procedural Background

Plaintiff sued Defendants for racial and gender discrimination in violation of the Equal Pay Act ("EPA"), Title VII of the Civil Rights Act of 1964, and 42 U.S.C. § 1981, which manifested in assigning job duties, work territories, and her termination.  (Dkt. 24.)  Plaintiff also claims Defendants interfered with her rights under the Family and Medical Leave Act ("FMLA").  (*Id.*)

Defendants moved for summary judgment, arguing Plaintiff released her employment claims by knowingly and voluntarily signing the severance and release agreement.  (Dkt. 26.)  In the alternative, Defendants claims she cannot disavow the agreement because she did not tender back the benefits she already received.  (*Id.*)

The Magistrate Judge recommended denial of Defendants' motion for summary judgment.  (Dkt. 35.)  The Magistrate Judge found a question of fact as to whether Defendants coerced Plaintiff into signing the severance agreement.  (*Id.*)  The Magistrate Judge also found the tender-back rule did not require Plaintiff to return her severance payment to Defendants before filing suit.  (*Id.*)

Defendants object to the Magistrate Judge's recommendations. (Dkt. 39.) Defendants argue two points: first, Defendants claim the Magistrate Judge improperly found an issue of material fact on whether Plaintiff knowingly and voluntarily signed the agreement; and, second, the Magistrate Judge improperly held Plaintiff was not required to tender back payments and reimburse benefits. (Dkt. 39.) Plaintiff did not reply to Defendants' objections.

## II.   Standard of Review

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine if the evidence would allow a reasonable jury to find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it is "a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

The party moving for summary judgment bears the initial burden of showing a court, by reference to materials in the record, that there is

no genuine dispute as to any material fact. *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). A moving party does this by showing "an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. The movant, however, need not negate the other party's claim. *Id.* at 323. It simply must show a lack of dispute as to a material fact. In determining whether a movant has done this, the Court views the evidence and all factual inferences in the light most favorable to the party opposing the motion. *Johnson v. Clifton*, 74 F.3d 1087, 1090 (11th Cir. 1996).

If the movant meets its burden, the nonmovant must show that summary judgment is improper by identifying specific evidence that raises a genuine dispute as to a material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Ultimately, there is no "genuine [dispute] for trial" when the record as a whole could not lead a rational trier of fact to find for the nonmoving party. *Id.* But "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."

*Anderson*, 477 U.S. at 247–48.   The court, however, resolves all reasonable doubts in the favor of the non-movant.  *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

When a party objects to an R&R, the district court must review de novo any part of the Magistrate Judge's disposition that is the subject of a proper objection.  *See* FED. R. CIV. P. 72(b); 28 U.S.C. § 636(b).  "Parties filing objections to a magistrate's report and recommendation must specifically identify those findings objected to."  *Marsden v. Moore*, 847 F.2d 1536, 1548 (11th Cir. 1988).  If an objection fails to identify the specific findings or a specific basis for the objection, a court need not consider it.  *See id.*

## III.   Discussion

### A.   Ability to Release EPA Claims in Severance Agreement

Plaintiff initially argued that the severance agreement was ineffective as to her EPA claims because the EPA is part of the Fair Labor Standards Act ("FLSA") and FLSA claims cannot be negotiated in private releases.   The Magistrate Judge rejected this argument, and neither party objected to the finding.  The Eleventh Circuit has not analyzed this issue, but other courts have found that the justification for the judicial

enforcement of FLSA settlements — unequal bargaining power — does not apply to ADEA claims, even though the ADEA incorporates the FLSA. *See Runyan v. Nat'l Cash Register Corp.*, 787 F.2d 1039, 1041–44 (6th Cir. 1986); *Gormin v. Brown-Forman Corp.*, 963 F.2d 323, 327 (11th Cir. 1992). In *Lynn's Food Stores, Inc. v. United States*, the Eleventh Circuit found the FLSA's provisions mandatory because of the great inequalities in bargaining power between employees and employers. 679 F.2d 1350, 1352–55 (11th Cir. 1982). But, as the Magistrate Judge points out, the EPA is not designed to address unequal bargaining power — it is designed to address disparity in pay between men and women. Women, as a class, do not require judicial oversight of all settlement agreements. The Court thus finds plaintiffs can release EPA claims as long as these claims are released knowingly and voluntarily.

## B.   Knowing and Voluntary Waiver of Claims

The Magistrate Judge found a question of fact over whether Plaintiff entered into the severance agreement knowingly and voluntarily. (Dkt. 35.) Defendants say this finding was wrong. (Dkt. 39.) To determine if a waiver of federal employment claims was knowing and voluntary, the Eleventh Circuit uses the totality of circumstances test.

*See Myricks v. Fed. Reserve Bank of Atlanta*, 480 F.3d 1036, 1040 (11th Cir. 2007).

Under this test, a court assesses six objective factors: (1) plaintiff's business experience and education; (2) the amount of time plaintiff had to review the waiver before signing it; (3) the agreement's clarity; (4) the plaintiff's opportunity to consult a lawyer about the agreement; (5) employer encouragement (or lack thereof) of consulting with a lawyer; and (6) consideration in exchange for the plaintiff's waiver. *Id.* The Eleventh Circuit also considers evidence of fraud, duress, or coercion to determine whether the agreement was voluntary. *Griffin v. Kraft Gen. Foods, Inc.*, 62 F.3d 368, 374–75 (11th Cir. 1995) ("[W]e hold that nonstatutory circumstances, such as fraud, duress, or coercion in connection with the execution of the waiver, may render an ADEA waiver not 'knowing and voluntary.' "); *Freeman v. Motor Convoy Inc.*, 700 F.2d 1339, 1352 (11th Cir. 1983) ("The court should beware of any evidence of fraud or coercion.").

Upon a de novo review of these factors and the fraud/duress question, the Court finds a limited question of fact as to whether Plaintiff entered the settlement agreement knowingly and voluntarily.

### 1.   Business Experience and Education

The Magistrate Judge found Plaintiff's work and educational experience did not show Plaintiff made a knowing and voluntary waiver of her claims because her job as a chaplain did not give her any specialized ability to assess whether Williams's statements were incorrect or illegal.  (Dkt. 35.)  Defendants objects to this finding because it improperly characterized Plaintiff's experience by overlooking Plaintiff's higher education and previous business experience, specifically in human resources.  (Dkt. 39.)

The Court agrees with Defendants.  Plaintiff has a master's degree in counseling and business experience in a human resources capacity. (Dkt. 26-2 at 80–81.)  More importantly, the purpose of the business experience and education factor is to measure an employee's sophistication — if the employee could and did in fact understand the agreement.  *See Paylor v. Hartford Fire Ins. Co.*, 748 F.3d 1117, 1124 (11th Cir. 2014) (finding a knowing and voluntary waiver because of the employee's experience in the industry, despite the employee not graduating from high school and only completing a few higher education courses); *Gascho v. Scheuerer Hosp.*, 400 F. App'x 978, 981 (6th Cir. 2010)

("Nothing about [the employee's] history suggests that the agreement was beyond her — that she did not have the capacity or background to grasp its meaning . . . . It is fair to conclude that an experienced nurse, with her training and background, could comprehend the meaning and effect of a settlement agreement.").

Plaintiff's business experience and education support finding Plaintiff understood the agreement and its effects.  In fact, Plaintiff admits she understood it.  (Dkt. 26-4 ¶¶ 16–18.)

### 2.  Time to Review the Agreement

The agreement gave Plaintiff twenty-one days to decide whether to execute it.  (Dkt. 11-4.)  The Eleventh Circuit has found this amount of time sufficient.  *See Paylor*, 748 F.3d at 1124–25 (holding where an agreement expressly indicated the employee had twenty-one days to review the agreement, but the employee did not read the agreement thoroughly, any confusion resulting was due to the employee's own lack of attention to detail).  And again, Plaintiff admits she felt no immediate pressure to sign the agreement and considered it for two weeks before signing.  (Dkts. 11-4; 26-4 ¶¶ 14, 28; 30-4 at 60:16–18.)  This factor also indicates a knowing and voluntary waiver.

### 3.     Agreement's Clarity

The agreement is short and clear. (Dkt. 11-4.) It explicitly releases the claims Plaintiff pursues in this action. (*Id.*) Further, Plaintiff testified that she read and understood the agreement. (Dkt. 26-4 ¶¶ 16–18.) This factor likewise indicates Plaintiff's waiver was knowing and voluntary. *See Paylor*, 748 F.3d at 1124–25 (holding where an employee admitted to understanding the agreement's clear terms evidenced a knowing and voluntary waiver).

### 4.     Legal Consultation (Factors 4 & 5)

The agreement advised Plaintiff to consult with a lawyer. (Dkt. 11-4.) Plaintiff contacted a lawyer twice but did not actually retain counsel due to financial constraints. (Dkt. 26-4 ¶ 19.) In *Paylor*, the Eleventh Circuit considered similar language and found it supported a knowing and voluntary waiver. *Id.* at 1125. Plaintiff was advised to speak with an attorney and was given time to do so. This factor also supports a knowing and voluntary waiver.

### 5.     Consideration

The agreement gave Plaintiff a lump sum payment of $9,076.15 and benefits for waiving her employment claims. (Dkt. 26-4.) The Eleventh

Circuit has not set a threshold amount or method of calculating adequate consideration for a settlement waiver. In *Bledsoe v. Palm Beach City Soil & Water Conservation District*, the court held that when a claim was not included in the waiver and no additional evidence of consideration existed, then there was inadequate consideration. 133 F.3d 816, 820 (11th Cir. 1998). In *Myricks*¸ however, the Eleventh Circuit did not require consideration for release of ongoing claims against the employer. 480 F.3d at 1041.

The Court finds Plaintiff received adequate consideration for releasing her claims against Defendants. The claims involved in this action were explicitly within the agreement and Plaintiff received a lump sum payment and benefits for waiving these claims. (Dkts. 11-4; 26-4 ¶ 31.)

### 6.    Evidence of Fraud, Duress, or Coercion

Fraud, duress, or coercion may render an otherwise enforceable agreement voidable because, under coerced or fraudulent circumstances, an agreement cannot be made knowingly and voluntarily. *See Griffin*, 62 F.3d at 373–74. Plaintiff argues she entered the agreement under fraud, duress, and coercion. She claims she entered the agreement because

14

Williams falsely told her Defendants would terminate her benefits and withhold her last paycheck if she did not sign the agreement. (Dkts. 30-3 ¶ 5; 30-4 at 16:11–16.) She further alleges that she was susceptible to this unfair pressure because the was receiving medical treatment and had no other source of income. (*Id.*) Finally she alleges that, had Williams not told her that her benefits would be cut off and she would lose her pay, she would not have signed the agreement. (Dkt. 30-3 ¶ 6.) Williams denies telling Plaintiff she would lose her benefits at the termination meeting, thus creating an issue of fact. (*Id.*)

Plaintiff failed to define fully the defenses she asserts to invalidate the waiver. Defendants anticipated she would rely upon duress or coercion. (Dkt. 26-1 at 16–19.) Plaintiff responded by broadly claiming coercion and using the term "intentional misrepresentation" without further explanation. (Dkt. 30 at 3.) The Magistrate Judge analyzed claims for duress or coercion and briefly mentioned fraud. (Dkt. 35 at 17–19.) Defendants objected to all three. (Dkt. 39 at 4.) It remains unclear to the Court if Plaintiff relies upon a duress/coercion defense, a fraud defense, or both. The Court considered both.

"Business compulsion or economic duress involves the taking of undue or unjust advantage of a person's economic necessity or distress to coerce him into making a contract . . . ." *Hampton Island, LLC v. HAOP, LLC,* 306 Ga. App. 542, 544 (2010); *Abdulla v. Klosinski*, 898 F. Supp. 2d 1348, 1368 (S.D. Ga. 2012), *aff'd*, 523 F. App'x 580 (11th Cir. 2013) (internal citations and quotation marks omitted).[1] This level of coercions is difficult to show.  In *Ryder Truck Lines, Inc. v. Goren Equipment Co.*, the court held that economic pressure alone was insufficient to constitute duress.  576 F. Supp. 1348, 1355 (N.D. Ga. 1983).  The court rejected the plaintiff's duress argument despite the plaintiff entering the agreement reluctantly, the terms being disadvantageous, the parties exhibiting

---

[1] Since the question before the Court concerns the enforcement of a settlement agreement, the Court applies Georgia law.  *See Myricks*, 480 F.3d at 1040 (applying state law when analyzing duress); *see also Veronda v. Ca. Dep't of Forestry & Fire Prot.*, 58 F. App'x 363 (9th Cir. 2003) ("The construction and enforcement of settlement agreements are governed by principles of local law . . . . This is true even where the underlying cause of action is federal."); *Air Line Stewards & Stewardesses Assoc. v. Trans World Airlines, Inc.*, 713 F.2d 319, 321 (7th Cir. 1983) ("A settlement agreement is a contract and as such, 'the construction and enforcement of settlement agreements are governed by principles of local law applicable to contracts generally.'" (quoting *Fl. Educ. Assoc. v. Atkinson*, 481 F.2d 662, 663 (5th Cir. 1973))).

unequal bargaining power, and evidence of unfairness in the parties' negotiations.  *Id.*

Plaintiff here does not have an economic duress defense.  Plaintiff claims Defendants coerced her through economic pressure because of her medical treatment and financial situation.  (Dkt. 30-3 ¶ 6.)  Plaintiff's circumstances, however, resemble previous cases where courts applying Georgia law did not find economic duress.  *See Abdulla*, 898 F. Supp. 2d at 1368 (finding no court applying Georgia law has ever voided a contract because of economic duress); *Ryder Truck Lines*, 576 F. Supp. at 1355. The Court thus finds that Plaintiff did not present evidence to raise an issue of material fact as to whether she signed the agreement under duress or coercion.

To show fraud, Plaintiff must establish: (1) a false representation, (2) fraudulent intent, (3) intent to induce the plaintiff to act or refrain from acting, (4) justifiable reliance, and (5) damage proximately caused by the representation.  *JarAllah v. Schoen*, 531 S.E.2d 778, 780 (Ga. Ct. App. 2000).  Construing the facts in the light most favorable to Plaintiff, which means accepting Plaintiff's testimony that Williams told her she would not receive benefits and would lose her last pay check unless she

signed the agreement, Plaintiff's fraud claim can survive summary judgment.

Defendants do not argue Williams's alleged statement was true. They make two arguments to defeat Plaintiff's fraud claims: (1) Defendants did not know of Plaintiff's medical condition and economic situation at the time of Williams's alleged statement, and thus could not intend to induce reliance; and (2) Plaintiff could not justifiably rely on Williams's statements since she did not pursue information about the statements' truthfulness before signing the agreement. (Dkt. 39 at 6–10.) The Court rejects these arguments. First, Defendants did not need to know Plaintiff's medical and economic conditions to intend to induce her into signing the agreement. A jury could find the threat to withhold benefits and a final paycheck induced Plaintiff to sign the agreement, irrespective of her personal finances. Assuming he said it, he must have intended her to weigh this threat while making her decision. That he did not know specifically how she would weigh it is irrelevant.

Second, a jury could find that Plaintiff justifiably relied on Williams's comments. To show justifiable reliance on a false statement, a plaintiff must show "that a fraudulent misrepresentation was made

which was known to be false and made with intent to deceive, [and] '*it must also be shown that* [the party alleging the fraud] *exercised due care to discover the fraud.*'" *Taggart v. Claxton*, 318 S.E.2d 208, 210 (Ga. Ct. App. 1984) (quoting *Bimbo Builders v. Stubbs Props.*, 279 S.E.2d 731 (1981)).  Plaintiff attempted to contact Defendants' call center about her termination and the agreement multiple times.[2]  (Dkt. 30-2 ¶¶ 10–12.) When she finally connected with someone, that person directed all questions to "the local level."  Plaintiff has presented evidence from which a jury could conclude that she exercised due care to discover the fraud and, rather than being given clarifying information, was given reason to further rely on Williams's statement.  The Court thus denies Defendants summary judgment.  The question remaining is whether Plaintiff's

---

[2] The Magistrate Judge's R&R recommends considering Plaintiff's errata sheet.  (Dkt. 35 at 20–21.)  The errata sheet seeks to change "I don't" to "I don't know."  Defendants argue that following the sham doctrine, the Court should not consider it.  To exclude testimony under the sham doctrine, the party must: (1) have given a clear answer to unambiguous questions, which would negate existence of a material fact, and (2) the same party attempted to create an issue of fact afterwards that contradicts without explanation the initial testimony.  *See Van T. Junkins & Assoc. v. U.S. Indus.,* 736 F.2d 656, 657 (11th Cir. 1984).  Plaintiff's testimony about the call logs did not eliminate the possibility that a word was excluded from the transcript, which is what Plaintiff argues happened.  A jury will weigh the errata sheet's importance.

reliance on a fraudulent statement caused her to sign the severance agreement.

## C.    Tender-Back Requirement

Plaintiff received a severance package when she left the job. Defendants claim Plaintiff's failure to return the severance package prohibits her from suing to invalidate the agreement. The Eleventh Circuit has not said whether federal discrimination claims are subject to a tender-back requirement. The Magistrate Judge found it inapplicable, and this Court agrees.

Federal law determines whether Plaintiff can sue without tendering back the severance package. *See Forbus v. Sears Roebuck & Co.*, 958 F.2d 1036, 1040 (11th Cir. 1992) ("The question whether a tender back of the consideration was a prerequisite to the bringing of the suit is to be determined by federal rather than state law." (quoting *Hogue v. S. Ry. Co.*, 390 U.S. 516, 517 (1968)). In a case concerning a tender-back requirement, the Supreme Court found in *Oubre v. Entergy Operations, Inc.*, that a former employee could sue under the ADEA without first tendering back consideration received from the employer in exchange for a release. 522 U.S. 422 (1998). The Court reasoned that the Older

Workers Benefit Protection Act ("OWBPA") set the standard for releasing ADEA claims.  Since the release at issue did not meet that standard, the waiver was ineffective.  The Court also found that allowing this waiver would frustrate the statute's purpose as many former employees "will have already spent the moneys received and will lack the means to tender their return."  *Id.* at 427.    The Supreme Court recognizes this could create a perverse incentive for employers to "risk noncompliance with the OWBPA's waiver provisions" knowing employees could not tender the money back.  *Id.*

Courts have applied this same reasoning to waivers of employees' rights under Title VIII and the EPA.    In *McClellan v. Midwest Machining, Inc.*, for example, the Sixth Circuit found that an employee did not need to tender back consideration to bring claims under those statutes.  900 F.3d 297, 303–06 (6th Cir. 2018).  That court reasoned from *Oubre* and found that Title VII and the EPA are remedial statutes with the goal of eliminating discrimination in the workplace.  *Id.* at 306–07; *see also Richardson v. Sugg*, 448 F.3d 1046, 1055–1057 (8th Cir. 2006) (finding the tender-back requirement would frustrate Title VII's purpose); *Botefur v. City of Eagle Point*, 7 F.3d 152, 155 (9th Cir. 1993)

(finding plaintiff bringing § 1983 claim did not need to tender back consideration before suing). In *Fleming v. U.S. Postal Services AMF O'Hare*, however, the Seventh Circuit found *Oubre* could not be detached from its context and plaintiffs needed to tender back consideration before suing on discrimination claims. 27 F.3d 259, 260–263 (1994); *see also Lawson v. J.C. Penny Corp.*, 580 F. App'x 492, 494 (7th Cir. 2014) ("[N]o statute abrogates the tender-back requirement for releases of claims under *Title VII* and the *Equal Pay Act*."); *Chaplin v. Nationscredit Corp.*, 307 F.3d 368, 375 (5th Cir. 2002).

In addressing this circuit split, the Court considers the Eleventh Circuit's decision in *Forbus,* an opinion that pre-dated *Oubre.* In *Forbus*, the Eleventh Circuit considered whether a former employee needed to tender back consideration received pursuant to a severance agreement before bringing an ADEA claim. 958 F.2d 1040–41. The Eleventh Circuit first considered the Supreme Court's ruling in *Hogue v. Southern Railway Co.*, 390 U.S. 516 (1968), that employees did not need to tender back consideration before bringing a claim under the Federal Employers' Liability Act ("FELA") because that requirement would deter meritorious claims. The Eleventh Circuit then noted that the FELA and the ADEA

22

were "remedial statutes designed to protect employees" before concluding that a tender back was not necessary in invalidate ADEA releases.  958 F.2d at 1041.   The same reasoning applies to Plaintiff's EPA, Title VII, FMLA, and Section 1981 claims.  As the Magistrate Judge found, "to hold otherwise could tempt employers, knowing that employees who had just lost their jobs may need to use the settlement funds and may have difficulty repaying the money, to risk noncompliance with Title VII, EPA, FMLA, and Section 1981 by coercion."  (Dkt. 35 at 28.)  Since Plaintiff does not need to tender back consideration, her claims may go forward.

## IV.   Conclusion

The Court **ADOPTS in part** the Magistrate Judge's Report and Recommendation (Dkt. 35) and **DENIES** Defendants' Motion for Summary Judgment (Dkt. 26).

**SO ORDERED** this 15th day of November, 2019.

MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE